THE PEOPLE *ex rel.* City of Chicago

*v.*

THE WEST CHICAGO STREET RAILROAD COMPANY.

*Opinion filed June 16, 1903—Rehearing denied October 8, 1903.*

1. APPEALS AND ERRORS—*what necessary to involve a freehold.* A freehold is involved only when the result of the litigation must be that one party will gain and another lose a freehold estate, or when the title is so put in issue by the pleadings that a decision of the case necessarily involves a decision of title.

2. SAME—*when freehold is not involved.* A freehold is not involved in a proceeding for *mandamus* to compel a street railroad company to lower its tunnel under a river so as to relieve navigation from unnecessary obstruction, where the title of the company to the soil and the paramount easement of navigation are admitted, the only question being as to whether the tunnel unnecessarily obstructs navigation.

3. SAME—*when franchise is not involved.* Neither the franchise of a street railroad company nor the franchise of the city is involved in a proceeding by the city to compel the company to lower its tunnel under a river so it will not obstruct navigation, in accordance with the terms of the ordinance authorizing the construction of the tunnel.

4. SAME—*when constitutional question is not involved.* A proceeding by a city to compel a street railroad company to lower its tunnel under a river so that it will not obstruct navigation, does not involve the constitutional question of taking the property of the railroad company in question without compensation and without due process of law.

*People ex rel.* v. *West Chic. Street R. R. Co.* 105 Ill. App. 439, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. CHARLES G. NEELY, Judge, presiding.

GRANVILLE W. BROWNING, (CHARLES M. WALKER, of counsel,) for appellant.

W. W. GURLEY, JOHN P. WILSON, and CHARLES S. BABCOCK, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The city of Chicago filed in the circuit court of Cook county its petition for a writ of *mandamus* directed to the West Chicago Street Railroad Company, commanding said company, at its own cost and expense, to lower its tunnel under the south branch of the Chicago river at or near VanBuren street, so as to provide for a clear depth of at least twenty-one feet of water above said tunnel at all times between the existing dock walls, or to remove said tunnel, so that the same should cease to be an obstruction to the free navigation of said river. The defendant answered the petition, and replications were filed raising issues of fact. A jury having been waived, the issues were submitted to the court for trial. The court found the issues for the defendant, denied the writ and entered judgment against the relator for costs. The city of Chicago sued out a writ of error from the Appellate Court for the First District to review the judgment of the circuit court. The case was assigned to the branch of that court, which dismissed the writ of error for want of jurisdiction and entered judgment for costs against the city of Chicago. This appeal is from the judgment of the Branch Appellate Court dismissing the writ.

The error assigned is, that the Appellate Court erred in dismissing the writ of error for want of jurisdiction. The only question, therefore, is whether the Appellate Court had jurisdiction to hear and determine the errors assigned in that court. Whether the circuit court committed any error for which its judgment should be reversed is not involved.

It is first contended that the case involves a freehold, and that therefore the Appellate Court was without jurisdiction to review the judgment. The petition sets out that the city of Chicago is a municipal corporation organized under the general act for the incorporation of

cities and villages; that within its territorial limits is
the Chicago river, a navigable stream having its natural
outlet in Lake Michigan; that the West Chicago Street
Railroad Company is a corporation organized under the
laws of this State, operating lines of street railroad in
said city; that on April 2, 1888, the city council adopted
a resolution permitting said company to construct, at
its own expense, the tunnel under the Chicago river for
the use of its street railroad; that the tunnel was com-
pleted by said company in March, 1894; that the water
over the tunnel varied in depth from seventeen to eigh-
teen and three-tenths feet; that since the building of
the tunnel there has been an increase in the size of the
vessels used in lake transportation, so that it has be-
come necessary, for the proper use and navigation of the
river, to deepen the channel; that the Congress of the
United States, on March 3, 1899, passed an act for deep-
ening the same to a depth of twenty-one feet, provided
that the work of removing and re-constructing bridges
and piers, and lowering tunnels to permit a practical
channel with such depth, should be done or caused to
be done by the city of Chicago without expense to the
United States; that said city has passed an ordinance
ordering and directing said company, at its sole cost and
expense, to lower the tunnel as prayed for in the peti-
tion, and upon demand said company has refused to do
so.   The fifth paragraph of the answer alleges that the
defendant is the owner of the land under the river in
which the tunnel is situated, and that the approaches to
said tunnel on each side lie wholly on land owned by the
defendant. The averments of said paragraph are not de-
nied by replication and are therefore admitted.   (*Mayor
of Roodhouse* v. *Briggs*, 194 Ill. 435.)   It is admitted on the
record that the street railroad company is the riparian
owner of both sides of the river at the place where the
tunnel was constructed, and therefore owns the soil un-
der the river, and that the tunnel was wholly constructed

in its land under the bed of the river. A freehold is only involved where the result of the litigation must be that one party will gain and another lose a freehold estate, or where the title is so put in issue by the pleadings that a decision of the case necessarily involves a decision as to the title. The title to the freehold is not put in issue by the pleadings in this case, in which the title of the railroad company is admitted, and the city cannot gain a freehold estate nor the railroad company lose such an estate as a result of the litigation.

The fact that the title is in the railroad company and that the tunnel was rightfully constructed in the first instance by that company under its charter and in pursuance of a license from the city is admitted. It seems to be claimed, however, that the purpose of the suit is to deprive the railroad company of the full, absolute and exclusive enjoyment of the soil under the bed of the river as it now exists, and that therefore the freehold is involved. It is said that if the freehold is not involved in requiring the company to lower its tunnel four feet and deprive it of the use of four feet of soil under the river, it would not be involved in requiring it to lower the tunnel to a much greater depth. That is undoubtedly true, and upon this question the depth to which it is sought to have the tunnel lowered is not material. The question, however, is whether the railroad company is obstructing an easement to which its freehold is subject, by interrupting navigation. It does not dispute the proposition that its freehold is subject to the public right of navigation of the river, and its freehold is not involved in the question whether it is obstructing the paramount right of navigation. It is a street railroad corporation, claiming the right to build the tunnel by virtue of section 1 of the act in relation to street railroads, under which it was organized. That section provides that a street railroad company "may, subject to the provisions contained in this act, locate and construct its road upon and over

any street, alley, road or highway, or across or over any waters in this State, in such manner as not to unnecessarily obstruct the public use of such street, alley, road or highway, or interrupt the navigation of such waters." (Hurd's Stat. 1899, p. 1683.) It was by virtue of that act and a license from the city of Chicago that the tunnel was constructed. The company could only acquire and hold the lands on each side of the river for the purposes of its incorporation, and it acquired such lands, carrying with them the soil under the river, subject to the easement of the public for the purposes of navigation. It could only exercise its chartered power to build the tunnel and carry its street railroad under the river upon the express condition contained in its charter that it should not interrupt navigation. The city claims no right to require the tunnel to be lowered unless it is an obstruction to the paramount public right of navigation, to which the company concedes, as it must concede, that the freehold in the soil is subject. It is true that, as against a private individual, material taken from the bed of the river belongs to the riparian owner, and he may maintain replevin from a trespasser or wrongdoer. (*Braxon* v. *Bressler*, 64 Ill. 488.) But the question whether the railroad company would own the soil taken from the bottom of the river in deepening it is not involved in this case. The public have a right to enjoy the free and uninterrupted navigation of the river, unobstructed by anything which will materially impair such use. The ownership of the soil under the river is subject to the public easement and the necessary incidental right to keep the channel fit for navigation. The question whether the public authorities, in dredging the river, would have a right to appropriate the soil removed from the bed of the river to their own uses is not to be decided in this suit.

It is next argued that the suit involves a freehold because the public easement of navigation is involved. Counsel say that while the land under the river is sub-

ject to the easement of navigation, such easement stops
at the regular bed of the stream as it now exists. The
decision of that question would not result in one party
gaining and the other losing the easement of navigation.
The case is not like one where the existence of a perpet-
ual easement is asserted on the one hand and denied on
the other, but it is admitted that the easement exists,
and the only question is whether the tunnel is an unlaw-
ful obstruction to the easement, which the city of Chi-
cago may require the railroad company to lower. No
freehold is involved in the litigation. *Road District* v.
*Miller*, 156 Ill. 221; *Brownmark* v. *Livingston*, 190 id: 412;
*Keating* v. *Hayden*, 132 id. 308.

It is next insisted that the case involves franchises.
In the first place, it is said that it involves a franchise
of the street railroad company to build a tunnel under
the river under the charter, with the consent of the city
through its license. The right of the railroad company
to construct the tunnel is not questioned, nor the fact
that the tunnel was rightfully constructed in the first
instance. The right given by the charter is a limited
right to construct a tunnel in such a way that it will not
be an interruption of navigation, and that right is not in
controversy. The authority given by the State is only a
right to construct a tunnel upon the condition provided
in the act. There is no attempt to oust the defendant
from the exercise of any franchise, and whatever may be
the result of this suit, the franchise of the corporation
will not be lost. If the railroad company should be com-
pelled to lower its tunnel merely because it is an ob-
struction to navigation, its right to build tunnels in the
city of Chicago as authorized by its charter would not
be taken away or its exercise in a lawful manner prohib-
ited. The question involved in *Chicago and Western Indi-
ana Railroad Co.* v. *Dunbar*, 95 Ill. 571, is not of the same
nature as the question in this case. In the second place,
it is urged that a franchise of the city is involved. The

city is attempting to compel the lowering of the tunnel on the ground that it is not such a tunnel as the statute authorizes the company to maintain. There is no attempt to oust the city of any franchise, and the franchise of a city is not involved in every attempt to enforce an ordinance. No judgment could be given in this case whereby the city would be deprived of a franchise. Neither the question whether the tunnel is an obstruction to the public easement nor the question whether the ordinance is a reasonable or lawful exercise of the powers conferred by its charter over water-courses or tunnels within its limits involves a franchise of the city. All that is required to decide the questions involved is an application of the law to the facts of the case.

Finally, it is claimed that a constitutional question is involved, on the ground that the city is attempting to take the property of the street railroad company without just compensation and without due process of law. We are of the opinion that the issues in the case do not involve any constitutional question. The street railroad company acquired its rights and built its tunnel upon the condition that navigation should not be interrupted. If the tunnel is one which it has a right to maintain in its present location, the city cannot require it to be lowered. If it has no right to maintain it in that location because it is an obstruction to navigation and exists in violation of the condition upon which the railroad company was authorized to construct it, its property will not be taken by requiring it to be lowered. It would scarcely be asserted that the public authorities could not remove an obstruction from the bottom of the river without first instituting a condemnation suit to ascertain the damage to the owner of the soil under the river. To maintain the navigable character of the stream in a lawful way is not taking any property or property right of the owner of the soil under the river, which is subject to the right of free and unobstructed navigation.

The Appellate Court erred in dismissing the writ of error. The judgment of the Appellate Court is reversed and the cause is remanded to that court, with directions to consider and decide the case upon the errors assigned.

*Reversed and remanded.*