# CASES

### ARGUED AND DETERMINED

#### IN THE

# SUPREME COURT OF ILLINOIS.

---

### THE WEST CHICAGO STREET RAILROAD COMPANY

#### *v.*

### THE PEOPLE *ex rel.* City of Chicago.

*Opinion filed February 21, 1905.*

1. RIPARIAN RIGHTS—*ownership of bed of a river is subject to public easement of navigation.* The ownership and use of the bed of a river by the owner of land on both sides of the river is subject to the public easement of navigation.

2. SAME—*lawful structure under bed of river may become unlawful.* The fact that a tunnel constructed under a river by the ·owner of land on both banks was not an obstruction to navigation when constructed does not entitle the owner to maintain it in the same condition after it has become such an obstruction.

3. SAME—*one whose structure in soil of river obstructs navigation must remove it.* Whether a tunnel under a river is constructed by a street railway company as the owner of both banks of the river or under the authority of the Horse and Dummy act, if the tunnel becomes an obstruction to the paramount right of public navigation its removal may be compelled at the expense of such company without violating the constitutional provision prohibiting the taking or damaging of private property for public use without compensation.

4. MUNICIPAL CORPORATIONS—*right of city of Chicago to compel the lowering of tunnels.* As incident to its power to deepen the channel of water-courses, and as preliminary to its exercise of such power, the city of Chicago may compel the lowering of a tunnel under the Chicago river which has become an obstruction to public

navigation, such action being authorized by the River and Harbor bill of 1891, even though the actual work of deepening the channel is prohibited by the United States statutes until the plan therefor is approved by the chief of engineers and the Secretary of War.

5. SAME—*what does not affect city's right to compel lowering of tunnel.* The fact that a city, in granting the right 'to a street railway company to construct a tunnel under a river, did not reserve the right to compel the company to lower or remove the tunnel if it should become an obstruction to public navigation, does not affect the right of the city to compel such action in the event of its becoming an obstruction.

6. MANDAMUS—*fact that other obstructions exist is no defense.* The fact that other obstructions to public navigation of a river must be removed before any benefit can result from the removal of the obstruction sought to be compelled by *mandamus* is no reason for denying the writ, although it may be ground for staying execution of the writ until the other obstructions are removed.

7. SAME—*there should be a judgment awarding writ before peremptory mandamus is issued.* Before a peremptory writ of *mandamus* is issued there should be a judgment entered in form awarding the writ.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. C. G. NEELY, Judge, presiding.

W. W. GURLEY, JOHN P. WILSON, and CHARLES S. BABCOCK, for appellant:

To entitle the petitioner to a judgment for a *mandamus,* appellant must, at the date of the filing of the petition, have been in default in the discharge of a then existing duty or legal obligation. High on Ex. Legal Remedies, chap. 1, pars. 7, 12; *People* v. *Hatch,* 33 Ill. 9; *Gormley* v. *Day,* 114 id. 185; *United States* v. *Lamont,* 155 U. S. 303; *Hutchinson* v. *Coonley,* 209 Ill. 437; *People* v. *Mt. Morris,* 145 id. 427; *Yates* v. *People,* 207 id. 316; *People* v. *Sellars,* 179 id. 170.

The findings upon the issues of fact by the circuit court do not entitle the city to a writ of *mandamus,* even if the law governing the subject should be held as claimed by appellee.

*People* v. *Lieb,* 85 Ill. 484; *Railroad Co.* v. *Suffern,* 129 id. 274; *Swigert* v. *County of Hamilton,* 130 id. 538; *People* v. *McConnell,* 146 id. 532; *Chrisman* v. *Peck,* 90 id. 150; *Illinois Watch Case Co.* v. *Pearson,* 140 id. 423.

Under the act of Congress of March 3, 1889, the jurisdiction of the city of Chicago was so limited over the river that appellee has no right or power to order any change in the bed of the Chicago river until the plan of the work has been submitted to and approved by the Secretary of War, which has not been done in this case. *Chicago* v. *Law,* 144 Ill. 569; *Lussem* v. *Sanitary District,* 192 id. 404.

The ordinance passed by the city council on March 19, 1900, requiring the lowering of appellant's tunnel and the completion of the work on or before March 1, 1901, was void for unreasonableness, and also because it violates the obligation of the contract with the city of Chicago under which the tunnel was constructed, and said ordinance is the only foundation or authority for this suit. *Chicago* v. *VanIngen,* 152 Ill. 624.

The tunnel was constructed under authority delegated by the State to the city of Chicago. *McCartney* v. *Railroad Co.* 112 Ill. 611.

The city is estopped from asserting that the tunnel was unlawfully constructed or that it was not built at a depth authorized by the municipality. *Lee* v. *Mound Station,* 118 Ill. 304; *Martel* v. *East St. Louis,* 94 id. 67; *Railroad Co.* v. *Joliet,* 79 id. 25; *Atlanta* v. *Gaslight Co.* 71 Ga. 106.

The title of the bed of the stream being in the appellant it could lawfully build the tunnel under the bed of the river, and being a lawful structure when built, it can never become unlawful by reason of improvements in the river. *People* v. *Railroad Co.* 105 Ill. App. 439; *Railroad Co.* v. *Stein,* 75 Ill. 41; *Ensminger* v. *People,* 47 id. 384; *Chicago* v. *Laflin,* 49 id. 472; *McCartney* v. *Railroad Co.* 112 id. 611; *Ryan* v. *Brown,* 18 Mich. 196; *Norfolk City* v. *Cooke,* 2 Gratt. 430; *Ballance* v. *Peoria,* 180 Ill. 29; *Diedrich* v. *Railway*

*Co.* 42 Wis. 248; *State* v. *Narrows Island Club,* 100 N. C. 477; *Yates* v. *Milwaukee,* 77 U. S. 497; *Pearson* v. *Rolfe,* 76 Me. 380; *Stratton* v. *Currier,* 81 id. 497; *Williams* v. *Wilcox,* 8 Adol. & Ellis, 314; *Booming Co.* v. *Speechly,* 31 Mich. 336.

GRANVILLE W. BROWNING, (EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel,) for appellee:

The State may grant a charter to erect a structure under navigable water, but the grantee takes at his peril, and if changes in condition cause the structure to be an obstruction to navigation, the charter is no longer a protection and the structure must be abated.   1 Wood on Nuisance, 119.

The right of navigation is paramount to any right of property. *People* v. *Vanderbilt,* 28 N. Y. 396.

The title to the soil under navigable water is held by the State or its grantee subject to the paramount right of navigation. *Weber* v. *Harbor Comrs.* 18 Wall. 57; *Railroad Co.* v. *Illinois,* 146 U. S. 387.

Under the City and Village act of 1872 the city has the power to maintain the navigation of the Chicago river, to deepen it when made necessary by the growing demands of commerce, to order the removal of obstructions to navigation, to abate nuisances and purprestures. This tunnel is shown by the evidence and found by the court to be a public nuisance. *Escanaba Co.* v. *Chicago,* 107 U. S. 679; *Harmon* v. *Chicago,* 140 Ill. 297; Rev. Stat. chap. 24, art. 5, sec. 1, clauses 30, 31; *Chicago* v. *McGinn,* 51 Ill. 266.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The city of Chicago filed its petition in the circuit court of Cook county praying for a writ of *mandamus* commanding the West Chicago Street Railroad Company to proceed to lower its tunnel under the south branch of the Chicago river, at or near VanBuren street, so as to provide for a clear

depth above said tunnel of at least twenty-one feet of water at all times for the entire width of said tunnel and the entire length thereof between existing dock walls, or to wholly remove said tunnel, so that the same shall cease to be an obstruction to the free navigation of said river. The petition was answered and replications were filed raising issues of fact. Trial by jury was waived by the parties, and they agreed that both matters of law and fact should be tried by the court. There was a trial, at which the petitioner submitted to the court written propositions to be held as law in the decision of the case, in accordance with section 41 of the Practice act, and the trial resulted in a finding for the defendant. The writ of *mandamus* was denied and judgment was entered against the relator for costs. A writ of error was sued out of the Appellate Court for the First District for the review of the judgment, and that court, on motion of the defendant, dismissed the writ for want of jurisdiction. An appeal from that order was taken to this court and the judgment was reversed and the cause was remanded to the Appellate Court, with directions to decide the case upon the errors assigned on the record. (*People ex rel.* v. *West Chicago Street Railroad Co.* 203 Ill. 551.) The Appellate Court then proceeded to consider the errors, and reversed the judgment and remanded the cause to the circuit court with directions to issue a writ of *mandamus* as prayed for, but the writ not to be executed until two other tunnels in the river shall be removed or lowered so as not to be an obstruction to navigation. From that judgment of the Appellate Court this appeal is prosecuted.

Counsel for the appellant have filed an argument under twenty-one different heads, but say that it covers questions which do not properly arise in the disposition of the case, and sum up the reasons for which they contend the petitioner is not entitled to the writ as three in number: First, because the tunnel was constructed wholly below the bed of the Chicago river in land owned in fee by the defendant, and was

therefore a lawful structure and has not become an actual obstruction to the existing navigation of the river; second, that in no event is the defendant required to lower or remove the tunnel at its own expense; third, that the acts sought to be commanded would alter the channel of the Chicago river, which is prohibited by a statute of the United States until the plan of the work shall have been approved by the chief of engineers and the Secretary of War, which approval has not been obtained. These were the points contended for on the oral argument, and to them we will give our attention.

The first proposition rests upon a question of fact, and as this is an action at law the decision of the Appellate Court upon controverted questions of fact is conclusive and we can re-examine the case as to questions of law only.

The tunnel was built under the following ordinance of the city of Chicago passed April 2, 1888:

"Whereas, the board of directors of the West Chicago Street Railroad Company, on the second day of April, 1888, by and at the request of the mayor of the city of Chicago, adopted the following resolution:

" '*Resolved,* That the West Chicago Street Railroad Company, in consideration of the passage and approval by the mayor of the three ordinances passed by the city council of Chicago on the 13th day of March, 1888,—one granting to the West Division Railway Company the right to change its motive power from horse to cable or electric power, one granting to the Chicago Passenger Railway Company the right to make the same change, and one granting to the West Chicago Street Railroad Company the right to construct its tracks on Jefferson street between Madison and Washington streets, and to use horse, cable or electric power thereon,—hereby agrees by and with the city of Chicago at its own expense to construct a tunnel under the Chicago river and acquire the necessary right of way therefor on a route to be located by said company, between Madison and Twelfth streets, with the east terminus at Fifth avenue or west thereof and the western terminus at Halsted street or east thereof: *Provided, however,* that this company shall have the right from said city to construct said tunnel under any intervening street or streets and said river, within said limits, but such location and construction shall be such as not to interfere with the capacity, usefulness or grade of said streets, said tunnel to be used by this

company for street railroad tracks, and the construction thereof shall be commenced within three years and be completed within four years after the said city council shall grant permission to said railroad company to make said improvements, unless prevented by injunction or strikes, and the time said construction is so interfered with shall be added to said four years, all work to be done in a manner satisfactory to the commissioner of public works, and the tracks through the tunnel shall be connected with the street railroad tracks controlled by the company.'

"Now, therefore, be it ordained by the city council: That the agreement in said resolution contained be and the same is hereby accepted by and on behalf of the city of Chicago as a consideration from said company for the passage and approval by the mayor of the ordinances in said resolution specified, and authority is hereby granted said company to make the improvements therein mentioned."

The ordinance requiring the defendant to lower the tunnel, or, in effect, to cease maintaining it as an obstruction to navigation, was passed March 19, 1900, and is as follows:

"WHEREAS, by act of Congress of March 3, 1899, it is provided in the survey and estimate of cost for a channel twenty-one (21) feet deep in the improvement of the Chicago river from its mouth to the stock yards on the south branch and to Belmont avenue on the north branch, that aforesaid depth of twenty-one (21) feet is adopted as the project depth for such improvement; and whereas, it is in said act further provided that all the work of removing and re-constructing bridges and piers and lowering tunnels necessary to permit a practicable channel with said depth to be obtained shall be done or caused to be done by the city of Chicago, without expense to the United States; and whereas, the tunnel under the south branch of the Chicago river at VanBuren street was constructed by the West Chicago Street Railroad Company under a certain ordinance of the city of Chicago passed April 2, 1888; and whereas, a channel in the Chicago river of the depth of at least twenty-one (21) feet is now made necessary by the requirements of navigation and by the increase in the draft of vessels engaged in the

shipping trade of the lakes; and whereas, the said tunnel is an obstruction to said proposed improvement to the Chicago river and to the navigation thereof, and, as such obstruction, must be lowered so that there may be above it in said river a depth of at least twenty-one (21) feet of water or be removed altogether.

"Now, therefore, be it ordained by the city council of the city of Chicago:

"Section 1. That the West Chicago Street Railroad Company be and it is hereby ordered and directed, within three months after the date of the passage of this ordinance, at the sole cost and expense of said West Chicago Street Railroad Company, and without cost, damage, loss or expense, of any kind whatsoever, to the city of Chicago, to proceed to lower the tunnel under the south branch of the Chicago river at or near VanBuren street, being the same tunnel heretofore constructed by the said West Chicago Street Railroad Company under an agreement dated April 2, 1888, between the said West Chicago Street Railroad Company and the city of Chicago, and an ordinance passed by the city council of the city of Chicago April 2, 1888, authorizing the construction of said tunnel, in accordance with the provisions of said agreement, so as to provide for a clear depth above said tunnel of at least twenty-one (21) feet of water at all times. Said work shall be performed by the said West Chicago Street Railroad Company under the supervision and direction and subject to the approval of the commissioner of public works of the city of Chicago, and shall be completed on or before March 1, 1901.

"Sec. 2. This ordinance shall be in force and take effect from and after the date of its passage."

As stated when the case was here before, it is admitted on the record by the pleadings that the defendant is the owner of the land on both sides of the river at the place where the tunnel was constructed, and therefore owns the soil under the river subject to the public right of navigation.

Undoubtedly, if the tunnel, when completed, did not interfere with existing navigation it was then a lawful structure, as stated by counsel, but it does not follow that it has not become unlawful or that defendant has a right to maintain it if it is now an obstruction to navigation. The depth of the water over the tunnel is from seventeen to eighteen and three-tenths feet, and whatever may have been the fact at the time when it was built, the commerce of the great lakes is now carried by vessels drawing about twenty-one feet and requiring a channel of that depth. There was no contradiction in the evidence that many loaded vessels engaged in commerce cannot pass over the tunnel. The fact that the tunnel was constructed below the bed of the river in land owned by the defendant does not establish the proposition that it is now a lawful structure, for the reason that the ownership and use of the soil are subject to the public easement for the navigation of the river.

As we cannot re-examine the question of fact, we must ascertain what the finding of the Appellate Court was on the question whether the tunnel is now an obstruction to the navigation of the river. Counsel say that an issue was formed by the pleadings as to whether the tunnel was such an obstruction, and that relator admitted that it was not by failing to traverse the allegation. The answer avers that there were two other tunnels in the Chicago river as near the surface of the water as defendant's tunnel, and between it and Lake Michigan. The fact alleged is not denied by replication and is therefore admitted to be true. But the admission that, as a matter of fact, there were two other tunnels in the river over which there was no greater depth of water is not an admission that defendant's tunnel is not an obstruction. The fact that there are other obstructions to navigation which would have to be removed in order for the public to exercise its rights has no tendency to prove that defendant is not interfering with and obstructing such right, and is therefore immaterial. On the issues of law and fact submitted to the

214—2

court there was a finding for the defendant, and it is therefore urged that all issues of fact were found in its favor. As the Appellate Court did not make a different finding of fact, its findings were the same as those of the circuit court. The Appellate Court came to a different conclusion from the circuit court concerning the right of the relator to the writ, but did not recite in the judgment any findings of fact different from the facts as found by the circuit court. It is therefore presumed that the Appellate Court found the facts the same as the circuit court but differed from that court in the application of the law to the facts. Turning to the record of the circuit court we find that the relator submitted upon the trial various propositions to be held or refused, one of which, numbered 9, was held by the court, as follows: "The said tunnel, as constructed and maintained by the said defendant, is an obstruction to the navigation of the said river and an obstruction to the improvement of the said river to the depth of twenty-one feet at that point.— (Held)." The court refused to hold various propositions of law, from which it clearly appears that the finding and judgment of the court were not based on any finding that the tunnel was not an obstruction, but upon questions of law as to the right of relator to have it removed. Among the propositions which the court marked "refused" were propositions that the ordinance requiring defendant to lower the tunnel did not impair the obligation of any contract between the defendant and the city of Chicago; that the requirement to lower the tunnel was not a violation of the provision of the constitution that private property shall not be taken for public use without just compensation; that it was not necessary that the plans for re-construction of the tunnel should be first submitted to the chief of engineers of the United States and the Secretary of War and their approval be obtained therefor. The circuit court found the facts for the relator and the law against it. The Appellate Court found the facts to be the same but reversed the judgment on questions of law. So far

as we are concerned it must be taken as conclusively settled that the defendant's tunnel is an obstruction to the navigation of the river.

The second proposition of counsel is, that in no event can the defendant be required to lower or remove the tunnel at its own expense. That question was necessarily disposed of in our former consideration of the case, and we see no reason to change our views on that subject. The petition avers that the defendant is a corporation organized and existing under the laws of the State of Illinois and engaged in the business of operating lines of street railroad in the city of Chicago. Its counsel say that it is incorporated under the general act concerning corporations, and is thereby authorized to own, possess and enjoy so much real estate as shall be necessary for the transaction of its business. That act was passed in 1872, and a horse and dummy act was passed in 1874, by which any company which had been or should be incorporated under the general laws of this State for the purpose of constructing, maintaining or operating any horse or dummy railway or tramway was authorized to construct its road across or over any waters in this State in such manner as not to interrupt the navigation of such waters. This act was an addition to the charter of any company organized under the general Incorporation act, and its provisions have existed under some form ever since, conferring powers upon street railroad companies organized as the defendant is. It gave the defendant the right to construct its railroad either over or across the Chicago river, which included the tunnel, subject to the condition contained in it. Defendant could only hold real estate for the transaction of its business of maintaining and operating a street railroad, and the statute fixed the conditions under which it might use its real estate for building the tunnel. But it will make no difference if the defendant rests its right to build the tunnel on the fact that it owns the land on each side of the river and therefore owns the soil beneath it, for the reason

that the provision of the Horse and Dummy act is merely declaratory of the common law. The title to land under a navigable river is not the same as the title to the shore land. The title to the upland is absolute and paramount, while the title to the lands over which the navigable water flows is subordinate to the public right of navigation. In a navigable stream the public right is paramount, and the owner of the soil under the bed of such a stream can only use and enjoy it in so far as is consistent with the public right, which must be free and unobstructed. Many decisions are cited and commented upon by counsel, but they all recognize these rules of law and none of them deny their existence or propriety. It makes no difference, therefore, whether the defendant, in building the tunnel, was attempting to exercise the right of a private owner or rights conferred by the Horse and Dummy act. Under these established rules an owner who erects a structure, whether it be a tunnel or whatever it be, in the soil under the navigable water, does it at his peril, and if it becomes an obstruction to the paramount right of navigation he may be compelled to remove it. It necessarily follows that in requiring this tunnel to be removed no property of the defendant is taken or damaged. There is no interference with anything which the owner has a right to maintain, and the fact that it will require an expenditure of money by the defendant does not establish its right to compensation. There is no attempt to appropriate any property of the defendant to the public use or to deprive it of any right, but the only purpose of the proceeding is to protect the paramount right of the public to the navigation of the river. As there is nothing to be taken there is nothing to be compensated for.

The third proposition is, that the removal or lowering of the tunnel will alter the channel of the Chicago river, which is prohibited by the statute of the United States until the plan has been approved by the chief of engineers and the Secretary of War. The River and Harbor bill of 1899 pro-

vides for a survey of the river and an estimate of cost for a channel twenty-one feet deep from its mouth to the stock yards on the south branch and Belmont avenue on the north branch, exclusive of the cost of re-constructing or removing bridges or lowering tunnels.  A depth of twenty-one feet is adopted as a project depth for the improvement, with this proviso: *"Provided,* that all the work of removing and re-constructing bridges and piers and lowering tunnels, necessary to permit a practicable channel with said depth to be obtained, shall be done or caused to be done by the city of Chicago without expense to the United States."  This act contemplates and permits the removal of tunnels as obstructions to the river.  While it does not confer authority, we are of the opinion that it was intended to give permission, and that the provision relied upon does not apply.  Undoubtedly, if there should be a plan for the deepening and excavation of the bed of the river the plan must be recommended by the chief of engineers and approved by the Secretary of War.  So far as the State is concerned the power exercised by the city is granted in express words.  By clause 30 of section 1 of article 5 of the act under which it is incorporated, authority is given "to deepen, widen, dock, cover, wall, alter or change channel of water-courses."  The city has power, under its charter, to deepen the channel, and, as a preliminary to doing so, to require this tunnel to be lowered or removed, and the act of Congress permits it to proceed, so far as the lowering of the tunnel is concerned.

It is urged that the city cannot insist upon the removal of the tunnel for the reason that in granting the license no right was reserved for requiring a removal of the tunnel, and there was no contract by which the defendant bound itself to remove it when the navigation of the river might require such removal.  The city could not, if it would, grant the right to obstruct the navigation of the river, or bind itself to permit anything which has become an obstruction to be continued.  The State of Illinois has never attempted to grant such a

right to the city or to the defendant. The power given to the city is to deepen the channel and improve navigation— not to destroy it. By section 1 of the Horse and Dummy act it was expressly provided that street railroad corporations, in crossing rivers, should not interrupt navigation.

It is also argued that the tunnel should not be lowered or removed because there are two other tunnels between the place where it is located and the mouth of the river which are equally obstructions to navigation, and therefore there will be no beneficial result from the execution of the writ. If that is a good argument for the defendant it is also a good argument for the middle tunnel, and the city would be required to begin proceedings with the obstruction nearest the lake. It could as well be answered in a proceeding to remove that tunnel that there would be no beneficial result because vessels would get no farther than the second tunnel. To proceed against each obstruction successively would postpone the clearing of the river indefinitely and amount to a denial and obstruction of the public right for a considerable period. We think it clear that the fact of other obstructions in the river is no answer or justification for the defendant, but the fact of the other tunnels was deemed by the Appellate Court a reason for not executing the writ until they should also be removed. The provision for staying the execution of the writ was in favor of the defendant, and not a ground for complaint by it.

It is contended that the Appellate Court erred in its order in remanding the cause with directions to the circuit court to issue the writ. There is no direction that the circuit court shall enter a judgment, and the order of the circuit court was doubtless intended as a final judgment in that court. There should be a judgment entered in form awarding the writ before the peremptory *mandamus* is issued, and the judgment of the Appellate Court does not contain the words of such judgment. By section 80 of the Practice act the Appellate Court is authorized to give final judgment, and to either

issue execution from that court or remand the cause to the circuit court for execution or other proceedings to enforce the judgment. (*Osgood* v. *Skinner,* 186 Ill. 491.) There was no occasion for remanding the cause for a new trial, for the reason that the Appellate Court found the facts the same as the circuit court, and found that a judgment awarding the writ followed as a matter of law. There was no error of law to be corrected upon a trial of any issue of fact.

As the Appellate Court did not formally enter a judgment, but we approve of the conclusion of that court, final judgment will be entered in this court awarding a peremptory writ of *mandamus* according to the prayer of the petition, and the cause will be remanded to the circuit court with directions to issue a writ of *mandamus* accordingly, and with the further direction that if the defendant shall move for a stay of the execution of the writ the motion shall be allowed, and the writ shall not be executed until the Washington street and LaSalle street tunnels are both removed or lowered to a sufficient depth to be no longer an obstruction to navigation.

*Affirmed and judgment in this court.*