The People of the State of Illinois ex rel. Joseph E. Lindquist, Petitioner and Defendant in Error, v. Commonwealth Edison Company et al., Defendants. John J. Nolan, Plaintiff in Error.

Gen. No. 32,884.

Heard in the second division of this court for the first district at the June term, 1928.

Opinion filed January 7, 1929.

JOHN F. TYRRELL, JOHN F. HIGGINS and MYER H. GLADSTONE, for plaintiff in error; LOUIS GREENBERG, of counsel.

ISHAM, LINCOLN & BEALE, for defendants; CHARLES D. ALBRIGHT, of counsel.

KERN, STIEFEL & STIEFEL, for defendant in error; CHARLES W. STIEFEL, JR., of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

In a mandamus proceeding, commenced August 11, 1927, the following judgment order was entered by the superior court on August 19, 1927:

"On motion of attorney for petitioner it is hereby ordered that the special appearance on behalf of John J. Nolan be stricken for the reason that the same was filed subsequent to time allowed therefor and said defendant be adjudged in default herein; that defendant, Commonwealth Edison Company, permit petitioner to transfer certificates for shares of its capital stock to his name and issue to petitioner, Joseph E. Lindquist, new certificates for shares of its capital stock as prayed in the petition herein filed; that defendants, Richard Mueller and Edward J. Doyle, sign said certificates of stock when so issued and that defendant, Illinois Merchant Trust Company, register and countersign said new certificates when presented for registration."

On August 27, 1927, the court entered a further order, *nunc pro tunc,* as of August 19th, allowing Nolan 90 days within which to file a bill of exceptions, and also an appeal to this Appellate Court upon his filing bond with surety in the sum of $50,000, in 30 days from August 19th.

The transcript of the record does not disclose that Nolan filed either an appeal bond or a bill of exceptions, but it does disclose that on September 17, 1927, he sued out from the Supreme Court a writ of error to reverse the judgment and was granted a supersedeas—he having filed a bond in the sum of $15,000. Thereafter he assigned errors on the record and the other four defendants joined in the prosecution of the writ of error. On April 11, 1928, the Supreme Court transferred the cause to this Appellate Court because "no constitutional question" is involved, and on May 18th the transcript of the record, an abstract thereof and the briefs of the parties were filed in this court. Subsequently, additional briefs were filed by Nolan and petitioner respectively.

Nolan was not made a party to the petition as originally filed. There were five defendants named, viz., Commonwealth Edison Company, Doyle, Mueller, the Illinois Merchants Trust Company, and N. F. Jewett. Summons in the usual form was issued on August 11, 1927, returnable on August 17th. All these defendants were served on August 12th, except Jewett. On August 13th, on petitioner's motion, the court ordered that Nolan be made an additional party defendant and that summons issue. Apparently this action was taken in accordance with section 7 of the Mandamus Act, Cahill's St. 1927, ch. 87, p. 1622. The summons, issued August 13th, commanded the sheriff to summon Nolan, "impleaded with" the other defendants (naming them), to appear on *August 18, 1927,* "to answer unto the people of the State of Illinois, on the relation of Joseph E. Lindquist in his certain Petition for Mandamus heretofore filed in said Court." Nolan was served on August 17th.

In the petition Lindquist alleged in substance that on July 30, 1927, he purchased for a valuable consideration from Mrs. Josephine Nolan six certificates, aggregating 250 shares, of capital stock of the Commonwealth Edison Company (hereinafter referred to as Edison Co.), which certificates had originally been issued to John J. Nolan, and thereafter by him sold and assigned to Mrs. Josephine Nolan, as evidenced by indorsements thereon signed by him on December 21, 1926 (copies of certificates and indorsements are set out *in haec verba,* as well as copies of certain by-laws of the Edison Co., relating to transfers of stock); that, as appears from other indorsements on the certificates, Mrs. Josephine Nolan, on July 30, 1927, sold, assigned and transferred the same and the stock represented thereby to petitioner, and appointed him as her attorney to transfer the stock on the books of the Edison Co.; that on August 11, 1927, petitioner presented to the proper officer of the Edison Co.,

Richard Mueller, the six certificates so indorsed, together with a written notice of petitioner's purchase of the stock and of the assignment thereof to him, and a demand on the Edison Co. for permission to transfer the certificates and stock to him on the books, and for the issuance of new certificates to him (copies of the notice and demand are set out *in haec verba*); that Mueller and the Edison Co. refused and still refuse to comply with the demand or to transfer the stock or issue new certificates; that Edward J. Doyle is the vice president of the Edison Co. and duly authorized to sign certificates of its stock, and that the Illinois Merchants Trust Company is the duly appointed registrar of the stock of the Edison Co. The prayer of the petition is that a writ of mandamus issue, directed to said defendants, Edison Co., Doyle, Mueller, and the Trust Co., commanding Mueller to produce the books of the Edison Co. for the purpose of having the stock transferred to petitioner; and commanding him and the Edison Co. to forthwith issue to petitioner new certificates of stock, etc.; and commanding Mueller and Doyle to forthwith sign them when issued; and commanding the Trust Co. to forthwith register and countersign them when issued.

On August 17, 1927, the defendants, Mueller, Doyle and the Edison Co., each filed separate verified pleas, which are substantially the same and to the effect that on July 7, 1927, the Edison Co. was served with a notice or "stop transfer order" (copy attached); and that on August 5, 1927, there was filed with it an affidavit signed by John J. Nolan (copy attached). In the notice referred to, Nolan asked the Edison Co. to "place a stop transfer" on the six certificates (describing them) "until this order be revoked in writing." In the affidavit, sworn to on August 5th, Nolan states that he is the owner of the certificates; that the name "John J. Nolan," purporting to be his signature

affixed to the assignment blank on the reverse side of each certificate is not his signature, and is in each case a forgery; that he never verbally, in writing, or in any manner, authorized any person to affix his signature to the certificates or any of them, and that he never delivered the certificates to anyone with the intention of transferring his title thereto. On August 17th, also, the Trust Co. filed its answer to the petition, admitting that it is the registrar of certificates of stock of the Edison Co., and alleging that no certificates issued in petitioner's name have been presented to it (the Trust Co.) for registration, and that when they are duly presented it will be ready and willing to register the same.

Nolan did not enter his appearance on the return day (August 18th) of the summons served upon him. On the following day, August 19th, petitioner appeared and asked that Nolan's default be taken for want of an appearance. On that day Nolan, by attorney, entered a "special and limited appearance for the sole purpose of moving to quash the summons and process herein and contesting the jurisdiction of the court over this defendant." Although there is no bill of exceptions contained in the present transcript, disclosing what occurred before the court on that day, we are informed by statements made in the printed briefs of two of the parties that there was a hearing. In Nolan's brief filed in the Supreme Court, after stating that Nolan's special appearance "was stricken on the ground that it had been filed too late," it is stated that "thereupon the cause was heard, and what purports to be an order compelling the delivery of new certificates of stock was entered, without directing that the writ issue." In the brief of the other defendants, Edison Co., Doyle, Mueller, and the Trust Co., filed in the Supreme Court, it is stated that the judgment order in question was entered "after the hearing of evidence in support

of the petition, tending to establish the authenticity of Nolan's signature to the assignment to Mrs. Nolan." It thus sufficiently appears that Nolan preferred not to enter a general appearance and contest the transfer of the stock, as prayed for, on the ground of the claimed forgery of his signature to the assignments to Mrs. Josephine Nolan, and determined then to rest his whole case on the claimed want of jurisdiction of the court over his person.

The main contention urged in this court by counsel for Nolan is that the judgment order should be reversed, because "the summons issued against Nolan is void on its face and did not confer jurisdiction upon the court either to default him or hear the cause."

Section 15 of the present Practice Act of 1907 reads as follows, Cahill's St. 1927, ch. 110, p. 1944:

"It shall not be necessary hereafter in any action of *mandamus* or *quo warranto,* to set out the cause of action in the writ, but it shall be sufficient to summon the defendant in a summons in the usual form, commanding the defendant to appear and answer the plaintiff in an action of *mandamus* or *quo warranto,* as the case may be, and the issue shall be made up by answering, pleading or demurring to the petition, as in other cases."

This section is identical with section 10 of the Practice Act of 1872. (Hurd's St. 1874, ch. 110, p. 776.) In 1874 the legislature passed an act "to revise the law in relation to mandamus," which is now in force and known as the "Mandamus Act," chapter 87, of our statutes, Cahill's St. 1927, p. 1622. This act did not expressly repeal said section 10 of the Practice Act of 1872, so far as it related to mandamus cases. (Hurd's St. 1874, ch. 87, pp. 691–692.) By said section 10, and said Mandamus Act of 1874, the practice in mandamus proceedings was changed materially (*Rowe v. People,* 96 Ill. App. 438, 441), and such a proceeding became "an ordinary action at law in

cases where it is the appropriate remedy.'' (*People ex rel. Sullivan v. Weber,* 86 Ill. 283, 285), and the petition took the place of the former alternative writ. (*People ex rel. Chicago & I. R. Co. v. Glann,* 70 Ill. 232, 233.) Sections 1, 2, 3 and 7 of the Mandamus Act of 1874, Cahill's St. ch. 87, ¶¶ 1, 2, 3 and 7, are as follows:

''Section 1. That upon the filing of a petition for a *mandamus,* the clerk of the court shall issue a summons, in like form as other summons in suits at law, commanding the defendant to appear at the return term thereof, and show cause why a writ of *mandamus* should not be issued against him. If the summons is issued . . . in term time, it may be made returnable on any day of the term *not less than five days after the date of the writ.*

''§ 2. Every defendant who shall be served with summons shall be held to show cause by answer to the petition, or to demur thereto, *on the return day of the summons,* or within such further time as may be allowed by the court; and in default thereof, judgment may be taken *nil dicit,* and a peremptory *mandamus* shall be allowed against the defendant.

''§ 3. The court in which any such petition is filed *may* allow the petitioner or any defendant such convenient time to answer, plead, reply, rejoin or demur as shall be deemed just and equitable.

''§ 7. If after the filing of any such petition, any other person than the original defendant shall appear to the court to have or claim any right or interest in the subject matter, such person may be made a defendant, and may be summoned, and appear and plead, answer and demur *in the same manner* as if he had been made defendant to the original petition.''

In 1874 also the legislature passed an act ''to revise the law in relation to quo warranto.'' Cahill's St. 1927, ch. 112, p. 1993. Section 2 of that act is similar to section 1 of said Mandamus Act, and provides:

"If the information is filed . . . in term time, it may be made returnable on any day of the same term, not less than five days after the date of the writ, as shall be directed by the court." And section 4 of the Quo Warranto Act, Cahill's St. ch. 112, ¶ 4, is similar to section 2 of the Mandamus Act, Cahill's St. ch. 87, ¶ 2. In 1907, the legislature passed the present Practice Act, section 15, Cahill's St. ch. 110, ¶ 15, of which, relating to actions of mandamus and quo warranto, is identical with section 10 of the Practice Act of 1872. And section 1 of the present Practice Act, concerning process, form of summons and when returnable, is identical with section 1 of the Practice Act of 1872. Cahill's St. 1927, p. 1942; Hurd's St. 1874, p. 774. It provides in part: "The first process in all actions to be hereafter commenced in any of the courts of record in this State shall be a summons, except actions where special bail may be required; which summons . . . shall be made returnable on the first day of the next term of the court in which the action may be commenced. If ten days shall not intervene between the time of suing out the summons and the next term of court, it shall be made returnable to the succeeding term. . . ."

In the case of *People v. Moeckel*, 256 Ill. 598, a quo warranto proceeding, it is decided, for reasons stated in the opinion: (1) That the Practice Act of 1907 did not repeal, expressly or by implication the provision of section 2 of the Quo Warranto Act of 1874, Cahill's St. ch. 112, ¶ 2, which authorizes a summons issued in term time to be returnable at the same term, not less than five days after the date of the writ, and (2) that said section of the Quo Warranto Act was intended to provide a different procedure for summoning defendants in quo warranto proceedings from that provided by the Practice Act for ordinary civil actions at law. We are not advised that our Supreme Court has rendered a similar decision as regards sec-

tion 1 of the Mandamus Act of 1874, Cahill's St. ch. 87, ¶ 1, but we can see no reason why the decision is not equally applicable to said section 1 of said Mandamus Act, and we hold that said section of said Mandamus Act was intended to provide a different procedure for summoning defendants in mandamus proceedings from that provided by section 1 of the present Practice Act, Cahill's St. ch. 110, ¶ 1, for ordinary civil actions at law, and that where a summons is issued in term time in a mandamus case "it may be made returnable on any day of the term *not less than five days after the date of the writ*," and that, where a new party has been made a defendant to a petition previously filed, and a summons ordered to issue as to him, the writ of summons may be made returnable on a day not less than five days after the date thereof, as is the clear import of section 7 of the Mandamus Act, Cahill's St. ch. 87, ¶ 7.

But, it is further contended by counsel that, inasmuch as the date of the summons issued against Nolan was August 13, 1927, and it was made returnable on August 18th, "five full days" did not intervene between the date of the writ and the day on which he was required to appear, and that, hence, the writ was void and the court did not acquire jurisdiction of Nolan's person. Although certain cases decided in other jurisdictions are cited by counsel to sustain the contention, we are of the opinion, in view of our statute as to rules of construction of statutes, and of numerous decisions in this State, that the contention is without merit. In section 1 of chapter 131, entitled "Statutes," Cahill's St. 1927, p. 2430, is the following rule: "Eleventh—The time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is Sunday, and then it shall also be excluded." August 18, 1927, was a Thursday. In *Ewing v. Bailey,* 4 Scam. (Ill.) 420, it appears that Bailey recovered a judgment before a justice of the peace against Ewing

on April 16, 1842; that on May 5th Ewing entered into an appeal bond before the justice, which was approved by the latter on that day; that the justice filed the bond and papers of the case with the clerk of the circuit court on May 25th; that by a statute then in force the justice was required to file the bond and other papers in the case in the office of the clerk of the circuit court "within twenty days after the approval of the bond," and that subsequently in the circuit court, on Bailey's motion, Ewing's appeal was dismissed. In holding that this ruling was erroneous our Supreme Court said (p. 421): "The only question sought to be decided in the case is, whether the justice complied with this provision of the statute. The proper mode of computing time, where an act is to be performed within a particular period from or after a specified day, is to exclude the day named, and include the day on which the act is to be done. For example, a promissory note executed on the first day of the month, and payable in twenty days from date, falls due on the 21st of the month; in reckoning the time the day of the date is excluded, and the day on which the maker is required to pay is included. By this rule, the day on which the appeal bond was executed was to be excluded in the computation of the 20 days, and the justice had the whole of the 25th day of May in which to file the papers." This decision as to the correct mode of computing time has been followed in the cases of *People ex rel. Harless v. Hatch,* 33 Ill. 9, 138; *Vairin v. Edmonson,* 5 Gilm. (Ill.) 270, 272; *Bowman v. Wood,* 41 Ill. 203, 205; *People v. Snow,* 279 Ill. 289, 291. In said *Bowman* case, it is decided that, in cases of *service* of a summons, the day it was made is to be excluded and the return day may be included; and that, where there are 10 days, after excluding the day on which service is made, before the first day of the term to which a summons is returnable, the service is in time and will support a judgment by default, entered on a

day subsequent to the first day of the term. In the present case the order of default and judgment was entered on the day after the summons against Nolan was returnable. (See also *Central Trust Co. of Illinois v. Loeff,* 213 Ill. App. 337–340.)

Counsel further contend that the writ of summons is void, because, in addition to requiring Nolan to appear on August 18, 1927, and "answer unto the People," etc., it did not contain the words "and show cause why a writ of mandamus should not be issued against him." We regard this contention as captious. Section 15 of the Practice Act, Cahill's St. ch. 110, ¶ 15, provides that, in a mandamus case, "it shall be sufficient to summon the defendant in a summons *in the usual form,* commanding the defendant to appear and answer," etc. Furthermore, as we read section 1 of the Mandamus Act, Cahill's St. ch. 87, ¶ 1 (which contains the words referred to by counsel) together with section 2 of the act, said words are not required to be stated in the writ, but it is sufficient if a defendant be commanded therein to appear on the return day. After he has appeared he may demur, plead, or file an answer, to the petition of the relator, and in any such manner "show cause why a writ of mandamus should not be issued against him."

Counsel further contend that the judgment order should be reversed because the record does not affirmatively disclose, after Nolan had filed his special appearance questioning the jurisdiction of the court over his person, that he was served with any notice of petitioner's application to default him. The contention is without merit. In the absence of a bill of exceptions, it will be presumed that he did have such notice (*Szatkowski v. Catholic Order of Foresters,* 78 Ill. App. 484, 487; *McGuire v. Gilbert,* 80 Ill. App. 235, 238) ; that the default was regular (*Baldwin v. McClelland,* 50 Ill. App. 645, 654), and that sufficient facts appeared on the hearing to warrant the court's judgment. (*Baldwin v. McClelland,* 152 Ill. 42, 52.)

Counsel finally contend that the judgment order should be reversed because it does not *in form* award a writ of mandamus. In *West Chicago St. R. Co. v. People,* 214 Ill. 9, 22, it is said: "There should be a judgment entered in form awarding the writ before the peremptory *mandamus* is issued." In that case, as in the present one, the judgment did not *in form* award such a writ, yet it is also stated that "the order of the circuit court was doubtless intended as a final judgment in that court," and the Supreme Court ordered (p. 23) that "final judgment will be entered in this court awarding a peremptory writ of *mandamus* according to the prayer of the petition, and the cause will be remanded to the circuit court with directions to issue a writ of *mandamus* accordingly." A similar ruling will be made here, and, accordingly under the authority of *McNulta v. Ensch,* 134 Ill. 46, 56, the judgment order in question will be reversed, and the cause remanded with directions to the superior court to enter a final judgment in the form that it should have been entered, viz., striking the special appearance of the defendant, John J. Nolan, from the files and adjudging him to be in default; and adjudging that a writ of mandamus forthwith issue commanding the defendant, Commonwealth Edison Company, to permit petitioner to transfer the 250 shares of its capital stock, as represented by said six certificates, to his own name, and to issue forthwith to petitioner new certificates for said shares; and commanding the defendants, Richard Mueller and Edward J. Doyle, to sign said new certificate when issued; and commanding the defendant, Illinois Merchants Trust Company, to register and countersign said new certificates when presented for registration.

*Reversed and remanded with directions to enter a similar judgment, though in different form, against defendants.*

SCANLAN and BARNES, JJ., concur.