# LAKE SHORE & MICHIGAN SOUTHERN RAIL- WAY COMPANY *v.* OHIO.

ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 156. Argued January 15, 1897.—Decided February 15, 1897.

The provisions in §§ 4, 5 and 7 of the act of September 19, 1890, c. 907, conferring upon the Secretary of War authority concerning bridges over navigable water-ways, do not deprive the States of authority to bridge such streams, but simply create an additional and cumulative remedy to prevent such structures, although lawfully authorized, from interfering with commerce.

THE case is stated in the opinion.

*Mr. George C. Greene* for plaintiff in error.

*Mr. T. E. Burton* for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the court.

The judgment of the Supreme Court of the State of Ohio to which this writ of error was prosecuted affirmed a judgment of the trial court rendered in proceedings by *quo warranto* ordering the defendant below, an Ohio corporation, to absolutely remove a bridge or to modify its structure by creating an adequate draw-span therein ; the bridge being one by it erected and maintained over the Ashtabula River, a short distance above the point where that stream empties into Lake Erie. The legal conclusions of the lower court were rested upon certain specific findings of fact, viz., that the bridge without a draw had been erected and was maintained without the consent of the State by an abuse, by the corporation, of the franchise held by it from the State, and that it was a public nuisance impeding the navigation of the river, which was wholly within the State of Ohio. Both the pleadings and the errors here assigned deny the jurisdiction of the State of Ohio or its courts to control the subject-matter of the con-

troversy, on the theory that the determination of whether the defendant possessed the right to erect the bridge and to continue it, although constructed without authority, is a Federal and not a state question. This contention is predicated on §§ 4, 5 and 7 of the act of Congress of September 19, 1890, c. 907, 26 Stat. 426, 453.

The contention is that the statute in question manifests the purpose of Congress to deprive the several States of all authority to control and regulate any and every structure over all navigable streams, although they be wholly situated within their territory. That full power resides in the States as to the erection of bridges and other works in navigable streams wholly within their jurisdiction, in the absence of the exercise by Congress of authority to the contrary, is conclusively determined. *Willson* v. *Blackbird Creek Co.*, 2 Pet. 245; *Withers* v. *Buckley*, 20 How. 84; *Cardwell* v. *American Bridge Co.*, 113 U. S. 205; *Willamette Bridge Co.* v. *Hatch*, 125 U. S. 1; *Shively* v. *Bowlby*, 152 U. S. 1, 33, and authorities there cited. Indeed, the argument at bar does not assail the rule settled by the foregoing cases, but asserts that as the power which it recognizes as existing in the States is predicated solely upon the failure of Congress to exert its paramount authority, therefore the rule no longer obtains, since the act of 1890, relied on, substantially amounts to an express assumption by Congress of entire control over all and every navigable stream, whether or not situated wholly within a State.

The correctness of this proposition is the sole question for consideration. The fourth section of the act relied on provides.:

"That whenever the Secretary of War shall have good reason to believe that any railroad or other bridge now constructed, or which may hereafter be constructed over any of the navigable water-ways of the United States is an unreasonable obstruction to the free navigation of such waters on account of insufficient height, width of span, or otherwise, or where there is difficulty in passing the draw-opening or the draw-span of such bridge by rafts, steamboats or other water craft, it shall be the duty of the said Secretary, first giving

the parties reasonable opportunity to be heard, to give notice to the persons or corporations owning or controlling such bridge so to alter the same as to render navigation through or under it reasonably free, easy and unobstructed; and in giving such notice he shall specify the changes required to be made, and shall prescribe in each case a reasonable time in which to make them. If at the end of such time the alteration has not been made, the Secretary of War shall forthwith notify the United States District Attorney for the district in which such bridge is situated, to the end that the criminal proceedings mentioned in the succeeding section may be taken."

The fifth section makes it a misdemeanor to wilfully refuse to comply with the lawful orders of the Secretary of War in the premises, and for the prosecution of the offender by proceedings instituted by the proper district attorney. The portion of the seventh section, which relates to the question in hand, is as follows:

"And it shall not be lawful hereafter to commence the construction of any bridge, bridge-draw, bridge piers and abutments, causeway or other works over or in any port, road, roadstead, haven, harbor, navigable river or navigable waters of the United States, under any act of the legislative assembly of any State, until the location and plan of such bridge or other works have been submitted to and approved by the Secretary of War, or to excavate or fill, or in any manner to alter or modify the course, location, condition or capacity of the channel of said navigable water of the United States, unless approved and authorized by the Secretary of War: *Provided,* That this section shall not apply to any bridge, bridge-draw, bridge piers and abutments, the construction of which has been heretofore duly authorized by law, or be so construed as to authorize the construction of any bridge, draw bridge, bridge piers and abutments, or other works, under an act of the legislature of any State, over or in any stream, port, roadstead, haven or harbor, or other navigable water not wholly within the limits of such State."

On the face of this statute, it is obvious that it does not support the claim based upon it. Conceding, without decid-

ing that the words " water-ways of the United States," therein used, apply to all navigable waters, even though they be wholly situated within a State, and passing, also, without deciding, the contention, that Congress can lawfully delegate to the Secretary of War all its power to authorize structures of every kind over all navigable waters, nothing in the statute gives rise even to the implication that it was intended to confer such power on the Secretary of War. The mere delegation to the Secretary of the right to determine whether a structure authorized by law has been so built as to impede commerce, and to direct, when reasonably necessary, its modification so as to remove such impediment, does not confer upon that officer power to give original authority to build bridges, nor does it presuppose that Congress conceived that it was lodging in the Secretary power to that end. When the distinction between an authorized structure so erected as to impede commerce, and an unauthorized work of the same character is borne in mind, the fallacy of the contention relied on becomes apparent. The mere delegation of power to direct a change in lawful structures so as to cause them not to interfere with commerce cannot be construed as conferring on the officer named the right to determine when and where a bridge may be built. If the interpretation claimed were to be given to the act, its necessary effect would be that Congress, in creating an additional means to control bridges erected by authority of law, had, by implication, confirmed and made valid every bridge built without sanction of law.

The language of the seventh section makes clearer the error of the interpretation relied on. The provision that it shall not be lawful to thereafter erect any bridge "in any navigable river or navigable waters of the United States, under any act of the legislative assembly of any State, until the location and plan of such bridge . . . have been submitted to and approved by the Secretary of War," contemplated that the function of the Secretary should extend only to the form of future structures, since the act would not have provided for the future erection of bridges under state authority if its very purpose was to deny for the future all

power in the States on the subject. The qualification affixed to the proviso which accompanies this section throws light on the entire statute and points obviously to the purpose intended to be accomplished by its enactment. The qualifying language is that the section shall not apply to any bridge "heretofore duly authorized by law, or be so construed as to authorize the construction of any bridge, draw bridge, bridge piers and abutments, or other works, under an act of the legislature of any State, over or in any stream, port, roadstead, haven or harbor, or other navigable water, not wholly within the limits of such State." The construction claimed for the statute is that its purpose was to deprive the States of all power as to every stream, even those wholly within their borders, whilst the very words of the statute, saying that its terms should not be construed as conferring on the States power to give authority to build bridges on streams not wholly within their limits, by a negative pregnant with an affirmative, demonstrate that the object of the act was not to deprive the several States of the authority to consent to the erection of bridges over navigable waters wholly within their territory. To hold that the act manifested an intention on the part of Congress to strip the several States of all authority over every navigable stream wholly within the State would require the obliteration of these qualifying words, and would therefore be the creation of a new statute by judicial construction. It follows, therefore, that, even conceding *arguendo* that the words "navigable waters" as used in the act were intended to apply to streams wholly within a State, its obvious purpose was not to deprive the States of authority to grant power to bridge such streams, or to render lawful all bridges previously built without authority, but simply to create an additional and cumulative remedy to prevent such structures, although lawfully authorized, from interfering with commerce.

*Affirmed.*

MR. JUSTICE BREWER concurred in the result.