CHICAGO TRANSP. CO. et al. v. PENNSYLVANIA CO. et al.

(District Court, N. D. Illinois, E. D.   September 22, 1917.)

No. 32145.

1. NAVIGABLE WATERS ⬤⇒20(2)—BRIDGES—AUTHORITY TO CONSTRUCT.
   Where Congress has not already legislated to the contrary, the power
   of a state to authorize the construction of bridges over navigable streams
   wholly within the state, and incidentally to determine what structures
   will interfere with navigation, is supreme.

2. NAVIGABLE WATERS ⬤⇒20(2)—BRIDGES—AUTHORITY TO CONSTRUCT—CHICA-
   GO RIVER.
   Congress having in 1890 assumed jurisdiction over the Chicago river
   for purposes of commerce and navigation under Act March 3, 1899, c.
   425, § 9, 30 Stat. 1151 (Comp. St. 1916, § 9971), which provides that
   bridges may be built over navigable rivers wholly within one state under
   authority of the Legislature of that state and with the approval of the
   Chief Engineer and Secretary of War, a bridge built over the Chicago riv-
   er, under authority obtained in accordance with the laws of the state of
   Illinois and according to plans approved by the Secretary of War, is a
   lawful structure.

In Admiralty.   Suit by the Chicago Transportation Company and
others against the Pennsylvania Company and the Chicago & Alton
Railroad Company.   Decree for respondents.

Charles E. Kremer, of Chicago, Ill., for libelants.

Loesch, Scofield, Loesch & Richards, of Chicago, Ill., for respondent
Pennsylvania Co.

Winston, Payne, Strawn & Shaw, of Chicago, Ill., for respondent
Chicago & A. R. Co.

CARPENTER, District Judge.   Libelants are owners of the schoon-
er Cora A., a sailing vessel of 370 tons burthen, with an extreme length
of 148 feet, and 31 foot beam; at light draft her masts were 140 feet
above the surface of the water.   Defendants are the owners of a rail-
road bridge across the South branch of the Chicago river in the vi-
cinity of West Sixteenth street in the city of Chicago, the draw of
which may be raised to a height of 120 feet only above the surface of
the water.

Libelants claim that in the fall of 1913 the Cora A. was laid up for
the winter in the South branch of the Chicago river above the railroad
bridge, and that on the 24th day of April, 1914, she attempted to pass
down the river and into Lake Michigan, but on account of the bridge,
which had been constructed during the winter, was obliged to lower
her topmasts and rigging and raise them after passing through the
bridge, and was damaged accordingly.   Subsequently, on the 14th day
of July, 1914, the Cora A. arrived in Chicago with a cargo of lumber
from Michigan consigned to a point in the South branch of the Chicago
river above the bridge in question.   The schooner was a second time ob-
liged to lower her masts in order to proceed up the river and unload her
cargo, and after passing down through the draw had to set her masts
and rigging, thereby being damaged a second time.   Libelants claim

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that the bridge is an .obstruction to and an unreasonable interference with the free navigation of the river by vessels with masts more than 120 feet high, and is therefore an unlawful structure.

Authority to bridge the Chicago river was granted to the Pittsburgh, Ft. Wayne & Chicago Railway Company by the charter issued to it by the state of Illinois in 1853. The Legislature of Illinois conferred authority upon the city of Chicago to bridge or to permit others to bridge the Chicago river and its branches. By act of Congress the permit of the city to bridge the river is subject to approval or rejection by the Secretary of War.

The Pennsylvania Company, successor of the Pittsburgh, Ft. Wayne & Chicago Railroad Company, and the Chicago & Alton Company, which companies own the bridge, caused plans and specifications to be prepared for a new bridge. Application was made to the city of Chicago for permission to build such bridge, and the permit was issued. The Sanitary District of Chicago, claiming a limited jurisdiction over the river, assented to the construction of the bridge. Thus the railroad companies were authorized by the state of Illinois to build such a bridge. The location proposed and the plans were submitted to the Secretary of War, and after due deliberation were approved by him. Thus the railroad companies were authorized by the United States to erect the bridge with a clearance of 120 feet.

Section 9 of the River and Harbor Appropriation Act of March 3, 1899, 30 Stat. at Large, 1151, is as follows:

"Sec. 9. That it shall not be lawful to construct or commence the construction of any bridge, dam, dike, or causeway over or in any port, roadstead, haven, harbor, canal, navigable river, or other navigable water of the United States until the consent of Congress to the building of such structures shall have been obtained and until the plans for the same shall have been submitted to and approved by the Chief of Engineers and by the Secretary of War: Provided, that such structures may be built under authority of the Legislature of a state across rivers and other waterways the navigable portions of which lie wholly within the limits of a single state, provided the location and plans thereof are submitted to and approved by the Chief of Engineers and by the Secretary of War before construction is commenced: And provided further, that when plans for any bridge or other structure have been approved by the Chief of Engineers and by the Secretary of War, it shall not be lawful to deviate from such plans either before or after completion of the structure unless the modification of said plans has previously been submitted to and received the approval of the Chief of Engineers and of the Secretary of War."

Libelants claim that the right to use the navigable waters within the United States is paramount and cannot be abridged or denied, that libelants always had used the Chicago river with their schooners, and that by reason of the railroad structure were prevented from so using it without considerable damage and expense.

[1] Respondents claim that the statute above quoted confers upon the Secretary of War original authority to authorize the building of bridges in the navigable waters of the United States, and that, inasmuch as the railroad companies had secured a permit from the Secretary of War, their right to build the bridge cannot be questioned. This contention is settled against the respondents by Lake Shore & Michigan Railway v. Ohio, 165 U. S. 365, 17 Sup. Ct. 357, 41 L. Ed. 747. The

statute in question does not deprive the several states of the Union of their right to determine what structures interfere with navigation when the navigable waters are located wholly within the borders of the state. The power of the states to legislate with reference to navigable streams wholly within their jurisdictions, where Congress has not already legislated to the contrary, is supreme. The respondents, however, must succeed in this case.

[2] The Chicago river is wholly within the state of Illinois. In 1890 Congress assumed jurisdiction and control over the Chicago river for the purposes of commerce and navigation. The power to permit the construction of a bridge over the river still remains in the state of Illinois, or its municipal agents, but under Act Sept. 19, 1890, c. 907, § 7, 26 Stat. 454, Congress having assumed control over the river, a bridge could not be constructed until the proposed location and the plans therefor were first submitted to and approved by the Secretary of War in the interest of commerce and navigation. If the Secretary of War found that either the place or the plan of construction would unnecessarily obstruct commerce and navigation, he was in duty bound to withhold his approval, and the bridge could not be constructed notwithstanding the permit from the state. The state has the power to authorize the construction of the bridge; the Secretary of War had the power to permit or refuse to permit the bridge to be built, his discretion being controlled by the effect the proposed bridge would have upon commerce and navigation. It follows that two permits are essential to the construction of such bridges, one by the state, or its authorized agent, and the other by the United States government through the Secretary of War. The respondents have secured both. The bridge was therefore duly authorized, and was a lawful structure. Miller v. Mayor of the City of New York, 109 U. S. 385, 3 Sup. Ct. 228, 27 L. Ed. 971; Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523; Monongahela Bridge Co. v. United States, 216 U. S. 176, 30 Sup. Ct. 356, 54 L. Ed. 435; Lake Shore & Michigan Railway v. Ohio, 165 U. S. 365, 17 Sup. Ct. 357, 41 L. Ed. 747.

The libel will be dismissed, without costs.