(No. 11957.—Reversed and remanded.)

THE PEOPLE ex rel. Maclay Hoyne, Appellant, vs. THE METROPOLITAN WEST SIDE ELEVATED RAILWAY COMPANY et al. Appellees.

*Opinion filed October 21, 1918—Rehearing denied Dec. 4, 1918.*

1. WATERS—*United States has not assumed exclusive jurisdiction over navigable streams.* Neither by the act of Congress of September 19, 1890, nor by the subsequent amendatory acts, including section 18 of the act of March, 1899, has the United States taken exclusive jurisdiction over the matter of compelling the removal of obstructions in navigable streams within the several States.

2. SAME—*State may require reconstruction of bridge which was not an obstruction when built.* Even though a bridge constructed across a navigable stream by a railroad company was constructed with the consent of Federal and State authorities, was built under plans approved by them and was not then an obstruction to navigation, yet when, owing to increased commerce and other conditions, the bridge becomes a serious obstruction to proper navigation, the State, or its lawful agency, may require the bridge to be reconstructed.

3. SAME—*duty of railroad company not unnecessarily to impair usefulness of stream is a continuing one.* The duty of a railroad company, when building a bridge across a navigable stream, not unnecessarily to impair the usefulness of the stream is a continuing one, and the company does not, merely by constructing a bridge which then fully complies with the law, acquire a vested right to have the bridge remain unchanged when subsequent conditions demand a reconstruction of the bridge to meet the needs of the public.

4. SAME—*neither city nor the State can be estopped to exercise police power.* Neither the State nor a city acting for the State, in authorizing the construction by a railroad company of a bridge across a navigable stream, can contract away or be estopped to exercise its police power in requiring changes in the structure in after years to meet the needs of the public in respect to navigation.

CARTER, J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. FREDERICK A. SMITH, Judge, presiding.

MACLAY HOYNE, State's Attorney, (LEO SPITZ, and WILLIAM C. ASAY, of counsel,) for appellant.

A. L. GARDNER, ISHAM, LINCOLN & BEALE, PEFFERS
& WING, and LOESCH, SCOFIELD, LOESCH & RICHARDS,
(FRANK J. LOESCH, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

November 15, 1907, the then State's attorney of Cook
county, on behalf of the people of the State of Illinois, filed
a bill in chancery in the circuit court of Cook county against
the Metropolitan West Side Elevated Railway Company
(hereafter referred to as the Metropolitan Company) and
other defendants, alleging said railway company had built
obstructions to navigation in the south branch of the Chi-
cago river, and praying that the company be ordered and
directed, at its own expense, to remove said obstructions.
April 8, 1909, a supplemental information or bill was filed,
alleging the passage of an ordinance by the city of Chicago
February 8, 1909, ordering and directing the Metropolitan
Company to alter or remove its bridge so as to provide a
navigable channel 140 feet wide. At the same time the in-
formation was amended by striking out paragraph 28 of
the original bill and inserting other allegations in lieu there-
of. December 16, 1912, a second supplemental information
was filed, alleging the widening of the river north and south
of the Metropolitan railway bridge, and that the work of
removing the Jackson street bridge and re-building it so
as to provide a navigable channel 140 feet wide between
abutments had been contracted for. The bill described the
Chicago river, its branches and the commerce carried on
said river,—a navigable stream wholly within the State of
Illinois,—and alleged that before encroachments by riparian
owners along the west bank of the river, and before the
building of obstructions in the south branch of the river
by the Metropolitan Company between Jackson and Van-
Buren streets, the river at the place of said obstructions,
and for some distance beyond, had a navigable width of
195 feet; that the Pittsburg, Ft. Wayne and Chicago Rail-

way Company, the Pennsylvania Company and the Chicago
and Alton Railway Company unlawfully and illegally filled
in a part of the navigable stream on the west side by ex-
tending docks out into the navigable portion of the river,
drove piles in said stream for the maintenance and support
of the docks, and filled in the part of the stream thus en-
croached upon with earth, rock and other substances, there-
by narrowing the river from Adams to VanBuren street,
leaving an average width of the channel of approximately
100 feet, the encroachments extending from the original
shore line approximately 95 feet out into the said stream.
The bill further alleges that in April, 1894, the Pittsburg,
Ft. Wayne and Chicago Railway Company and the Penn-
sylvania Company, claiming to have some right or interest
in the property created by the filling in and encroaching
upon the channel of the river, entered into an agreement
with the Metropolitan West Side Elevated Railroad Com-
pany purporting to grant to said company the right to con-
struct and maintain a bridge over and across said property
between Jackson and VanBuren streets. Said elevated rail-
road company was succeeded in title and interest by the
appellee the Metropolitan Company, and the bill alleges that
the bridge was completed about May 1, 1895, and is now
being maintained and operated by said last named company.
It is further alleged the abutments and pier protections of
said bridge were constructed in the navigable portion of the
river, and are purprestures upon a public navigable water-
way, are a nuisance and should be forthwith removed; that
said bridge was constructed in such a manner as to reduce
the width of the river to less than 100 feet, so that many
modern vessels of large capacity cannot safely navigate the
south branch of the river owing to the narrowness of the
stream caused by said bridge; that a large portion of the
shipping of the lakes has been prevented from making use
of the south branch, the loading and unloading of cargoes
have been delayed and prevented and commerce is being

driven away from the city of Chicago, to the injury of the whole people of the State of Illinois. The bill also sets out the organization of the Sanitary District of Chicago, the legislation affecting it, the requirements of the State and Federal authorities of the sanitary district, and to some extent what said district has done and accomplished pursuant to such requirements and authority, and then alleges that by reason of said obstructions maintained in the south branch of the Chicago river the sanitary district is unable to perform its functions in the manner provided by the law authorizing its creation and at the same time comply with the limitations placed upon the use of the river by the Secretary of War. No relief is prayed against any of defendants except the Metropolitan Company. The prayer of the bill is that said company be ordered and directed, at its own cost and expense, to forthwith remove and reconstruct the abutments and pier protections of its said bridge across and over the south branch of the Chicago river between Jackson and VanBuren streets, in such a manner as to provide a clear navigable channel between abutments and pier protections of at least 150 feet.

We deem it unnecessary to refer to the answer of any of defendants except that of the Metropolitan Company, as its answer raises every question relied upon to defeat the object and purpose of the bill. Its answer is very voluminous, containing 178 paragraphs and numerous exhibits attached. Briefly stated, the answer denied the material allegations of the information and alleged the bridge was lawfully constructed under authority granted by the city of Chicago by ordinance adopted April 7, 1892, with the approval of the commissioner of public works of said city and the permission and approval of the Secretary of War; that the bridge is lawfully maintained and does not obstruct navigation. The answer avers that the ordinance adopted by the city of Chicago on February 8, 1909, ordering the removal or reconstruction of the bridge so as to

provide a clear navigable channel 140 feet wide, is void; that the right of respondent to maintain said bridge is a vested right and that the State is estopped to compel its alteration or removal, setting up numerous grounds upon which it bases the defense of estoppel. The answer avers that the river has been since 1890 under the sole control of the United States, and its permits for the repair and construction of bridges are conclusive upon all parties, including the people of the State of Illinois. It is further averred in the answer that the suit was not brought in good faith by and on behalf of the people of the State but was instigated by the sanitary district in its interest, to enable it to acquire defendant's rights and interests without payment of compensation, and thus avoid compliance with the requirements of the Federal and State constitutions. The answer further sets up and relies upon *Sanitary District* v. *Metropolitan West Side Elevated Railway Co.* 241 Ill. 622, and *Sanitary District* v. *Pittsburg, Ft. Wayne and Chicago Railway Co.* 216 id. 575, as adjudications of the questions involved in this suit and binding upon the parties hereto.

The issues raised by the pleadings were referred to a master in chancery, with directions to take and report the testimony offered by the respective parties, together with his conclusions of law and fact. After hearing the testimony, oral and documentary, offered by the parties, the master made a report embodying his findings of fact and conclusions of law and recommending that the bill be dismissed for want of equity.

Complainant filed objections to the master's report, and defendants filed objections to certain findings of the master in his report. They were overruled by the master and renewed as exceptions before the chancellor. The chancellor overruled all of complainant's exceptions to the master's report and sustained defendants' exceptions 2 and 4 to the finding and conclusion of the master that the State and Federal courts had concurrent jurisdiction of proceedings to

require the removal of unreasonable obstructions in nav-
igable waters, and the chancellor held that jurisdiction in
such matters is vested solely in the Federal government.

The master found and reported that the sanitary district
was instrumental in the beginning and prosecution of the
suit and would be greatly benefited by granting the relief
prayed but that this fact would not warrant dismissing the
bill. The chancellor sustained an exception to this finding
of the master and held that the sanitary district was the
principal party in interest bringing the suit and that the suit
was not brought in the interest of the public or of naviga-
tion, and that this fact warranted dismissing the informa-
tion. The master also reported that the case of *Sanitary
District* v. *Pittsburg, Ft. Wayne and Chicago Railway Co.
supra,* was not an adjudication of the questions here in-
volved, because that was a condemnation suit, and the ques-
tion whether navigation of the south branch of the Chicago
river was unnecessarily obstructed and whether such an ob-
struction was a nuisance and should be removed could not
be determined in that suit; that the issues were not the
same as in this case and the parties were not the same. The
master also reported that the case of *Sanitary District* v.
*Metropolitan West Side Elevated Railway Co. supra,* was
not an adjudication of the questions involved in this case,
because the sanitary district has no authority to bring a
suit to abate an obstruction to navigation and cannot rep-
resent, bind or estop the people of the State of Illinois; that
it was an injunction suit to restrain a continuing trespass
to land and not to abate a nuisance obstructing navigation;
and furthermore, the Metropolitan Company and the city
of Chicago were co-defendants in that case and nothing
was litigated or adjudicated as between them. Defendants
filed no objection or exception to this finding of the master,
and the decree approves and confirms the report of the mas-
ter in all respects except as to the questions raised by excep-
tions 2, 4 and 6 above referred to. The master reported

the ordinance of the city of Chicago of February 8, 1909, directing the removal or reconstruction of the bridge, was void for the reason that the city of Chicago was estopped to direct or require the removal or reconstruction of said bridge on grounds set forth in the report, and also because the bridge is not a public nuisance and does not destroy or unnecessarily obstruct navigation. The master concluded that both the State of Illinois and the city of Chicago were in equity estopped to maintain the suit and compel the removal of the bridge abutments, and upon those grounds recommended the dismissal of the bill. The chancellor entered a decree as recommended by the master, dismissing the information, amended information, supplemental and second supplemental informations for want of equity, and complainant prosecutes this appeal to this court.

The principal questions presented for determination are: (1) Is exclusive jurisdiction to require the removal of obstructions to navigation in navigable waters wholly within a State in the United States or have the Federal and State governments concurrent jurisdiction? (2) The construction of the bridge having been authorized by the proper authorities, does it remain a lawful structure even though it subsequently became an unreasonable obstruction to navigation? (3) Are the State and the city of Chicago estopped to have the obstruction removed? (4) Does it appear that the sanitary district is principally interested in this proceeding and should the bill have been dismissed on that ground?

The obstruction stands on made land filled in beyond the dock line and extending into the channel as it formerly existed and was navigable about 95 feet. Formerly the Pittsburg, Ft. Wayne and Chicago Railway Company owned the land abutting the west bank of the Chicago river where this filling in occurred and where the Metropolitan Company's bridge is located. Said railway company leased its lands prior to 1885 to the Pennsylvania Railroad Company for 999 years. In 1885 the Pittsburg, Ft. Wayne and Chicago

Railway Company, with the consent of the lessee, contracted the sale of the filled-in strip between Adams and Jackson streets and between Jackson and VanBuren streets to the city of Chicago. The purchase was made by the city for the purpose of enabling it to straighten and deepen the channel of the river and to operate a swinging bridge at Adams street. The contract for the purchase was modified by agreements made between the Pittsburg, Ft. Wayne and Chicago Railway Company and the city of Chicago in 1887 and 1889. The consideration for the purchase was finally and fully paid. On April 7, 1892, the city passed, and the Metropolitan Company accepted, an ordinance authorizing the said company to build and maintain a bridge across the south branch of the river in such manner as should be approved by the commissioner of public works of said city. The ordinance provided that the bridge should not "be so constructed as to unnecessarily obstruct navigation or drainage." The bridge was completed in 1895, since which time it has been maintained and operated. Its construction was authorized by the Secretary of War and it was approved by the commissioner of public works of the city of Chicago. The sanitary district was created under the act of the legislature of 1889. It had authority to improve the Chicago river and its branches and connect them with the district channels to carry out and fulfill the purposes for which it was created. February 9, 1898, by an agreement between the Pittsburg, Ft. Wayne and Chicago Railway Company, the Pennsylvania Company and the sanitary district, the latter was authorized to, and pursuant to said contract did, construct a by-pass over and across a part of lot 69 west of the west piers and protections of the Metropolitan Company's bridge, for the purpose of maintaining an increased flow of water. April 21, 1899, the sanitary district entered into an agreement with the Metropolitan Company, (the successor in title and interest of the Metropolitan West Side Elevated Railroad Company,) whereby

the sanitary district agreed at its own expense to take up about 104 feet of the Metropolitan Company's water tunnel and intake, through which said company received its supply of water to operate its machinery, and re-lay and reconstruct the same in the place designated on a plat attached to the agreement.    May 26, 1899, another agreement relating to the same matter was entered into between the Pittsburg, Ft. Wayne and Chicago Railway Company, the Pennsylvania Company, the Metropolitan Company and the sanitary district.    By-passes were constructed and the tunnel of the Metropolitan Company reconstructed by the sanitary district at its own expense, and water is still flowing through such by-passes.    In May, 1903, the sanitary district, for the purpose of widening the channel of the south branch of the Chicago river, began condemnation proceedings against a portion of block 69 and other blocks abutting the river, and subsequently, while that suit was pending, by agreement with the city of Chicago, took over the city's contract with the Pittsburg, Ft. Wayne and Chicago Railway Company for the purchase of the land at the place of the alleged obstruction and paid the consideration therefor which the city was obligated to pay, amounting to $37,000.    The substance of the agreements, contracts and transactions referred to will be found stated in *Sanitary District* v. *Metropolitan West Side Elevated Railway Co. supra.*

The master reported in his finding of facts that the Chicago river is one of the principal highways of the city of Chicago and the State of Illinois, and by means of it commerce and traffic are carried on between the States of the United States, and particularly the States bordering on the Great Lakes; that large amounts of merchandise are constantly transported by vessels upon the Chicago river and its branches; that a large part of the vessels navigate the south branch of the Chicago river and their cargoes are loaded or unloaded at points south of the Metropolitan Company's bridge; that some vessels which navigate the

Great Lakes and the south branch of the Chicago river are 400 feet in length and 50 feet in beam, and many steamers more than 350 feet in length and 40 feet in beam navigate the south branch of the river; that many vessels navigating the Great Lakes exceed 500 feet in length and 50 feet in beam; that there has been an increase in the last ten years of 100 per cent in the capacity of vessels constructed for use on the Great Lakes and tributaries thereto. He further found as a fact from the evidence that between Jackson and VanBuren streets in a state of nature the river was much wider than it now is; that it was at least 175 feet wide, but that beginning prior to 1873 riparian owners and persons occupying the west bank have encroached upon the river by filling in and building docks where the river was formerly navigable; that the west abutment of the Metropolitan Company's bridge is situated in what was a navigable part of the river in 1867 and prior thereto; that at various times vessels have been delayed, hindered and damaged by encroachments upon the river and by bridges over it, which have made navigation dangerous and difficult, increased freight rates and lessened commerce. The master found and reported from the evidence that two steamers 350 feet long and of 45 feet beam could not safely pass each other between the abutments of this bridge.

None of the master's findings of facts were excepted to except finding 54, that navigation had been hindered, delayed and damaged by the obstructions and encroachments mentioned, and the exception to that finding was overruled. The great weight of the testimony sustained the master's findings. It is true, the Metropolitan Company's bridge is not the only obstruction to navigation between Adams and VanBuren streets, but in our judgment the testimony conclusively shows that it is a serious obstruction to navigation. In his conclusions of law the master reported that the bridge, when erected, was and now is a legal structure, not an unnecessary obstruction to navigation, and that it

cannot be made an illegal obstruction by widening the river. The master recommended the bill be dismissed because the city was estopped, for reasons set forth in his report, to require the removal of the obstructions, and because the bridge is not, in fact, a public nuisance and does not destroy or essentially impair or unnecessarily obstruct navigation. He concluded that the ordinance of February 8, 1909, directing the removal of the obstructions, was illegal and void. In our judgment the weight of the proof shows the Metropolitan Company's bridge to be a material and serious obstruction to navigation, and if it is, the master's conclusions of law referred to were erroneous. The chancellor overruled complainant's exceptions to the master's conclusions of law, confirmed the report in this respect and entered a decree in accordance with the recommendations of said report.

Unless the right of the State over navigable streams wholly within the State, which had existed and was universally recognized by all courts prior to the passage of the act of Congress of September 19, 1890, was destroyed by that act and exclusive jurisdiction vested in the Federal government, the court erred in sustaining the appellees' exception to the finding and report of the master that the United States had not assumed exclusive jurisdiction of navigation on the south branch of the Chicago river, but that such jurisdiction was concurrent with that of the State of Illinois and its duly authorized agent, the city of Chicago. In *Lake Shore and Michigan Southern Railway Co.* v. *Ohio,* 165 U. S. 365, an action was begun by the State of Ohio to compel the railroad company to remove or alter a bridge constructed by the company over a navigable stream wholly within the State, on the ground that it was a public nuisance, impeding the navigation of the river. It was contended by the railroad company that jurisdiction to exercise that power was taken away from the State by the act of Congress of September 19, 1890, and exclusive jurisdiction vested in the Federal government. This contention was not

sustained, the court holding that it was not the purpose of the act of 1890 to deprive the State of authority it previously had the right to exercise but was intended to provide an additional and cumulative remedy. The only difference we can see between that case and the one here under consideration is, that the plan and character of the bridge built by the Lake Shore Company do not appear to have been approved by the State but the bridge was built without an adequate draw-span and in such manner that it was an obstruction to navigation; while in this case the bridge was constructed by the consent of the city of Chicago, representing the State, such consent being manifested by ordinance, according to plans approved by the commissioner of public works of the city of Chicago and by the Secretary of War. In other words, the bridge in the *Lake Shore case* was unlawfully constructed in the first instance and was an unlawful structure. In this case a bridge was constructed in a manner permitted by the lawful authorities and was a lawful structure when built and not then an unreasonable obstruction to navigation, but it is claimed it has since become an unreasonable obstruction. If the act of 1890 did not affect the power of the State to require the removal of an obstruction placed in the stream unlawfully, we do not see how it could affect the authority of the State to require the removal of a structure lawfully placed in a navigable stream but which has since, because of changed conditions, become an unreasonable obstruction. The subsequent amendatory acts of Congress, including section 18 of the act of March, 1899, do not restrict or encroach upon the power the State had, previous to those enactments, been authorized to exercise. Conceding Congress has the power to take sole and exclusive jurisdiction over navigable waters wholly within a State, it has not done so.

It is the contention of appellee the Metropolitan Company,—and that appears to have been the view of the chancellor,—that the bridge having been built by authority of

285 — 17

law, State and Federal, pursuant to permits of the authorized public officials, it is a lawful structure and the Metropolitan Company is vested with the irrevocable right to maintain it as originally constructed; that by accepting and complying with the terms of the ordinance of April 7, 1892, the right to build and maintain the bridge as then constructed became a contract, by virtue of which the Metropolitan Company has an easement in perpetuity in the land upon which the west abutment of its bridge stands, and that the State cannot, in violation of the contract, require its removal. Conceding the bridge as originally built was a lawful structure and did not unreasonably interfere with navigation, the question arises as to the right and power of the authorities to require its removal or alteration when, on account of changed conditions and the increased demands of commerce and navigation, it becomes an unreasonable interference with traffic on the river.

The ordinance of 1787 for the government of the Northwest Territory provided that the navigable waters leading into the Mississippi and St. Lawrence rivers should be common highways "and forever free, as well to the inhabitants of the said territory as to the citizens of the United States," etc. This court held in *Illinois River Packet Co.* v. *Peoria Bridge Ass'n,* 38 Ill. 467, that this did not interfere with or deny to the State the right to authorize a bridge to be built over a navigable river lying within its jurisdiction, in a manner to interfere as little as possible with the right to free navigation; that the right of the public to navigate the river and the right of the public to cross over it were mutual; that neither was paramount, but in the enjoyment of their respective rights neither should unnecessarily interfere with or obstruct the other. The act of the legislature of this State under which the Metropolitan Company and its predecessor in title were organized, authorized any company organized under the act to construct its railway across any stream of water which the route of its rail-

way intersected, but required it to restore such stream "to its former state or to such state as not unnecessarily to have impaired its usefulness, and keep such crossing in repair." (Hurd's Stat. 1917, chap. 114, sec. 19.)    Under this authority railroad companies have exercised the right to build bridges across navigable and non-navigable streams lying within this State.    The duties imposed by the statute were defined in *Chicago, Burlington and Quincy Railway Co.* v. *People,* 212 Ill. 103.    In that case the railroad company had built a bridge across Rob Roy creek, a small non-navigable stream.    Some years after the bridge was built a drainage district was organized in the watershed of the creek, which required improving and deepening the creek to afford a sufficient channel to receive and carry off the waters coming into it from the lands of the district.    The bridge as constructed prevented this being done, and the drainage commissioners notified the railroad company to reconstruct its bridge so as to permit the widening and deepening of the channel.    The railroad company refused to reconstruct its bridge, and the drainage commissioners brought an action of *mandamus* to compel the company to do so.    The court sustained the right of the commissioners to the writ and held the right of drainage through a natural water-course is an easement appurtenant to the land; that the railroad company was bound to take notice of such easement and so construct and maintain its bridge as not only to serve the rights of the public at the time the bridge was built but for all future time.    That case was affirmed by the Supreme Court of the United States in *Chicago, Burlington and Quincy Railroad Co.* v. *People,* 200 U. S. 561.    That court held that even though the bridge, when built, was sufficient to allow the free passage of the water then flowing through the stream, the company's right to maintain the bridge was subject to the possibility that new circumstances and future public necessities might require material changes; that the company was bound to provide and main-

tain adequate means to carry such an increase of water as might result from lawful, reasonable regulations established by public authority, from time to time, for drainage. This view is supported by numerous authorities cited in the opinions referred to. It would seem logically to follow that the same rules and principles apply where the public rights of navigation are involved. The Metropolitan Company and the public, for the purpose of navigation, had mutual rights in the Chicago river at the point where the bridge crossed the river. Observing those rights, the bridge was constructed to accommodate the needs of the Metropolitan Company and to not seriously affect navigation. Because of increased commerce in the Chicago river, together with the increased size of the boats used in such commerce, the bridge has become a hindrance or unreasonable obstruction. While this was not so at the time the bridge was erected, changed conditions have made it so. It is well established by the authorities herein cited that the duty of a railroad company to restore a stream or highway which it crosses by the line of its road is a continuing duty, and that if, by the increase of population or other causes, the crossing becomes inadequate to meet the new and altered conditions of the country, it is the duty of the railroad company to make such alterations as will meet the present needs of the public. This is true whether or not the stream crossed is navigable. *West Chicago Street Railroad Co.* v. *People,* 214 Ill. 9; *Lake Erie and Western Railroad Co.* v. *Cluggish,* 143 Ind. 347; *Louisville Bridge Co.* v. *United States,* 242 U. S. 409; *Union Bridge Co.* v. *United States,* 204 id. 364.

In *West Chicago Street Railroad Co.* v. *People, supra,* the facts disclose that a tunnel had been built under the Chicago river by the railroad company pursuant to an ordinance of said city. Subsequently, by ordinance, the city required the railroad company to remove or lower its tunnel, which had become a hindrance to navigation. It was held the city could compel the removal or lowering of the tun-

nel upon its becoming an obstruction to navigation even though the city did not reserve such right when it authorized the railroad company to construct its tunnel.

In *Union Bridge Co.* v. *United States, supra,* a company built a bridge across the Alleghany river under a charter from the State of Pennsylvania containing no specifications as to the character of the structure but expressly providing that it should not obstruct the navigation of the river. The bridge, when built, met these requirements, but later, the boats used on the river being much larger than those formerly used and the volume of commerce increasing, the bridge was not of sufficient size to accommodate navigation. In the proceeding brought to require the bridge company to remove or reconstruct its bridge to meet present conditions, the court held the bridge company might be required at any time, by any authority having lawful jurisdiction, to so alter its bridge as to meet the enlarged requirements of navigation.

*Louisville Bridge Co.* v. *United States, supra,* involved the right of the United States to require the alteration or reconstruction of a bridge built by the bridge company across the Ohio river under an act of Congress. In 1914 the Secretary of War notified the bridge company that the bridge was an obstruction to navigation and ordered its alteration. The bridge company was about to renew the superstructure of the bridge without complying with the notice of the Secretary of War, and the Attorney General filed a bill to enjoin it from doing so. The Supreme Court held that the bridge company had no irrepealable franchise to maintain its bridge as it was originally constructed, and that the act of Congress created no vested right entitling the bridge company to compensation if the power to regulate commerce required changes to be made in the interest of navigation. The act authorizing the construction of the bridge contained a proviso that it should not be so constructed as to interrupt navigation, the true meaning of which the court said

was that the bridge should be so constructed as not at any time to interrupt navigation.

The police power of the State or Federal government cannot be contracted away or destroyed by compromise, and neither the State nor the city can be estopped to exercise such power. (*Northern Pacific Railway Co.* v. *Minnesota,* 208 U. S. 583; *City of Chicago* v. *O'Connell,* 278 Ill. 591.) The act of the legislature under which the Metropolitan Company was created required it to restore the river to its former state and maintain its bridge so as not to unnecessarily impair the usefulness of the river. The ordinance of the city of Chicago passed April 7, 1892, authorized the construction of the bridge, provided the same should not be so constructed as to unnecessarily obstruct navigation or drainage. Conditions with reference both to navigation and drainage have greatly changed since the first bridges across water-courses were built in this State. What formerly were sufficient to answer the needs and requirements of the time when built are in many instances now inadequate. To hold that if such structures were of sufficient size and character when built they cannot now be ordered removed or changed to comply with present requirements would arrest progress and thwart advancement.

The city of Chicago exercised the authority of the State in authorizing the bridge to be built, but it could not and did not grant authority to either build or maintain a structure that would be an unnecessary obstruction to navigation. (*Chicago, Burlington and Quincy Railroad Co.* v. *People, supra; Lake Erie and Western Railroad Co.* v. *Cluggish, supra; Ohio and Mississippi Railway Co.* v. *Thillman,* 143 Ill. 127; *Chicago, Rock Island and Pacific Railroad Co.* v. *Moffitt,* 75 id. 524; *West Chicago Street Railroad Co.* v. *People, supra,* affirmed by the Supreme Court of the United States and reported in 201 U. S. 506; *Louisville Bridge Co.* v. *United States, supra.*) This suit is not an attempt to oust the Metropolitan Company from the exercise of any

franchise. The purpose of the suit is not to deny the company the privilege of crossing the river with its railroad, but to require it to so re-adjust its structure that the enjoyment of its right shall not seriously and unreasonably obstruct or interfere with the public in the enjoyment of the right of navigation, which is as important as the right of the public to cross the river. The Metropolitan Company knew when it built its bridge that it must not unreasonably obstruct the right of navigation and was bound to know that this was a continuing duty which might necessitate changes and alterations in its structure. The law never contemplated or intended that the grant of authority to a railroad company to build its road over a navigable stream of water gave such company the right, if its bridge when built was not an unreasonable obstruction to navigation, to maintain it in that condition, notwithstanding by reason of changed conditions and increased facilities for commerce the structure became a material and unnecessary obstruction. Neither the statute of this State nor the ordinance of the city of Chicago purports to grant such right, and if they did, the Metropolitan Company could acquire no vested right under a grant of power which the authorities could not lawfully make.

The sanitary district will, as contended by appellees, be greatly benefited by the reconstruction of the Metropolitan Company's bridge, and it is interested in this proceeding brought by the State. The general public are also interested in the improvement, and the master found the bridge as it now exists, together with other bridges, the encroachments made upon said Chicago river, and the bends and turns in the river channel, have made it difficult and dangerous for large vessels to navigate said channel, resulting in increased freight rates and the lessening of commerce. The rights and interests of the general public are affected by the increased freight rates and the lessening of commerce, and the fact that the sanitary district will be benefited by the

relief sought in the information in this case cannot operate to defeat the public in the enforcement of its rights. Neither does the fact that other causes or agencies contribute to bring about the existing conditions of the river. *West Chicago Street Railroad Co.* v. *People,* supra.

The decree is reversed and the cause remanded, with directions to grant the relief prayed in the information.

*Reversed and remanded, with directions.*

Mr. JUSTICE CARTER, dissenting:

I do not concur in the conclusion of the foregoing opinion. The United States government has assumed control of all navigation and navigable rivers, including the Chicago river and its branches, and Congress has invested in the Secretary of War the sole jurisdiction of removing obstructions to navigation. Section 18 of the Rivers and Harbors act of March 3, 1899, provides, among other things, that whenever the Secretary of War shall have good reason to believe that any railroad or other bridge now or hereafter constructed over any of the navigable waterways of the United States is an unreasonable obstruction to the free navigation of such waters, on account of height, width or otherwise, it is the duty of the secretary (1) to give the parties reasonable opportunity to be heard; (2) to give notice to persons interested in controlling such bridge to alter the same so as to make navigation reasonably free and unobstructed; (3) to give notice and specify the changes recommended by the chief engineer; and (4) the time in which such changes shall be made.

Regardless of the technical power of the State officials or courts in matters of this kind, it seems to me that in order to reach any practical result any action taken with reference to this bridge must be sanctioned and approved by the Federal government. For a State court to hold this bridge to be an unlawful structure would be absolutely to ignore the positive provisions of said section 18 which specify the pro-

cedure to be followed when a bridge is claimed to be an un-reasonable obstruction to navigation, and Congress, through the Secretary of War, is responsible for the location of this bridge. The Federal statute provides a way through which any defects in the construction may be rectified. Where the Federal statute points out a procedure to be followed, it seems to me such procedure should be followed and that there is no authority to adopt any procedure in lieu of the Federal one.

The Metropolitan Elevated Railway Company, though granted permission by the State authority to construct this bridge, was not permitted to construct it until it received the approval of the Secretary of War. Such approval was refused until said company or the city had reconstructed the VanBuren street bridge so as to make it a bascule instead of a center-pier bridge; and the sanitary district was also required, before the approval by the Secretary of War was granted to build this bridge, to build by-passes around the Adams, Jackson, VanBuren and Madison street bridges and the Metropolitan Company's bridge. The sanitary district accepted a permit from the Secretary of War, on the conditions fixed by him, to reverse the flow of the Chicago river and of the south branch, and also accepted a permit from the Secretary of War to widen the south branch to 200 feet on the conditions fixed in said permit. All changes in the south branch affecting the navigation of the Chicago river have been made under the authority and by the permit of the Federal authorities since the sanitary district was organized. It has been generally understood and accepted by all parties interested that the whole question relating to the navigation of the Chicago river was above and beyond State control and wholly in Federal control. There is abundant authority showing that when the Federal government has taken charge of the question of navigation in any river, whether located entirely within, or partly within and partly without, the boundaries of a single State, the

Federal authorities will keep entire charge of navigation in said river. (*Union Bridge Co.* v. *United States,* 204 U. S. 364; *Monongahela Bridge Co.* v. *United States,* 216 id. 177; *Hannibal Bridge Co.* v. *United States,* 221 id. 194; *Louisville Bridge Co.* v. *United States,* 242 id. 409; see, also, *City of Chicago* v. *Law,* 144 Ill. 569.) In the last case it was held by this court that before authority should be granted to change the channel of the south branch of the Chicago river by the city of Chicago such change must have the approval of the Secretary of War.

In my judgment any attempt by the State authorities to · regulate this question by this or any other proceeding will only complicate matters and not help to bring about any practical solution of the problem. In order to reach practical and satisfactory results it must be through the agency of a single authority, and that authority, under the Federal statutes on this question, must be subject to the Federal jurisdiction as to the navigation of this river. If the Federal authorities refuse to sanction the finding of the State courts on this question or fail to recognize the authority of the State courts as to this decree, there is no process known to our jurisprudence to compel the Secretary of War to conform to or follow the finding of the State courts. If there be a conflict of authority between the Federal and State officers, the Federal authority has always been held supreme and .exclusive. See *Escanaba Transportation Co.* v. *Chicago,* 107 U. S. 678; *Miller* v. *New York,* 109 id. 385.

I do not think that the reasoning in *People* v. *West Chicago Street Railroad Co.* 203 Ill. 551, *West Chicago Street Railroad Co.* v. *People,* 214 id. 9, or *West Chicago Street Railroad Co.* v. *People,* 201 U. S. 506, is in any way in conflict with the conclusion, in view of the special facts in those cases, that the Federal authority must be held in this case to be supreme and exclusive. This being so, I think the chancellor on this ground, alone, was justified in dismissing the information in the trial court.